UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GONZALEZ SAENZ, K61926, Plaintiff, v. A. SALAZAR, Correctional Officer, Defendant(s). | Case No. 17-cv-05316-CRB (PR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR CROSS-SUMMARY JUDGMENT**<br><br>(ECF No. 17, 24 & 29) |

Plaintiff Robert Gonzalez Saenz, a state prisoner currently incarcerated at Centinela State Prison, filed a pro se complaint for damages under 42 U.S.C. § 1983 alleging that on March 25, 2017, while he was incarcerated at the Correctional Training Facility, he showed Correctional Officer A. Salazar various documents indicating that he had medical restrictions that affected his work duties as a porter (namely a 19-pound restriction on the amount of weight he could lift). But Salazar ignored plaintiff's medical restrictions and had plaintiff perform restricted work duties (namely empty large trash cans and carry a five-gallon container of disinfectant) in deliberate indifference to plaintiff's health and in retaliation for complaints plaintiff had filed against other correctional officers.

Per order filed on January 9, 2018, the court found that, liberally construed, plaintiff's allegations appear to state cognizable § 1983 claims for damages against Salazar for deliberate indifference to plaintiff's serious medical needs and for retaliation, and ordered the United States Marshal to serve Salazar, the only named defendant in this action.

Both plaintiff and defendant now move for summary judgment or cross-summary judgment under Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and that they, respectively, are entitled to judgment as a matter of law. Defendant also

1 claims that he is entitled to qualified immunity. The parties filed oppositions/responses and replies to the motions, which are now ripe for decision.

## DISCUSSION

A. <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u>

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." <u>Celotex</u>, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249-50.

When the parties file cross-motions for summary judgment, the court must consider all the evidence submitted in support of the motions to evaluate whether a genuine dispute of material fact exists precluding summary judgment for either party. <u>The Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two</u>, 249 F.3d 1132, 1135 (9th Cir. 2001).

B. Analysis

Defendant argues that he is entitled to summary judgment and qualified immunity from plaintiff's claims of deliberate indifference to serious medical needs and retaliation. Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[1]

1. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is "deliberately indifferent" if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Negligence is not enough for liability under the Eighth Amendment. Id. at 835–36 & n. 4.

---

[1] Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

3

An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." Id. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302–303 (1991)).

Defendant argues that he is entitled to summary judgment on plaintiff's claim that defendant was deliberately indifferent to plaintiff's serious medical needs by ignoring plaintiff's medical restrictions and having plaintiff perform restricted work duties because the evidence shows that plaintiff had no medical restrictions at the times alleged in the complaint. In support, defendant submits declarations and documentary evidence showing the following:

In March 2017, plaintiff worked as a first-floor porter in the Whitney B housing unit at the Correctional Training Facility. Salazar Decl. (ECF No. 29-1) ¶¶ 3, 17. Defendant was a correctional officer in that housing unit at that time. Id. ¶ 1, 3.

On March 24, 2017, plaintiff advised defendant that he was feeling ill. Id. ¶ 5. Plaintiff complained that he was suffering from diarrhea due to a medication he was taking. Id. He also stated that he had medical restrictions that would keep him from working. Id. Defendant gave plaintiff an excused absence from work and sent him to his cell. Id. ¶¶ 5, 6 & Ex. A (plaintiff's work assignment attendance record).

Defendant then checked plaintiff's central file to see if plaintiff had any medical restrictions that would keep him from performing his work duties and found no indication of any. Id. ¶ 10. Correctional officers do not have access to an inmate's medical records, but if an inmate has a medical restriction that affects his custody that restriction is reflected in the inmate's central file in the form of a comprehensive accommodation chrono. Branch Decl. (ECF No. 29-5) ¶ 7. Defendant found no such accommodation chrono in plaintiff's central file on March 24, 2017. Salazar Decl. ¶ 10. Nor was there any valid medical restriction or accommodation in plaintiff's medical file at that time. Branch Decl. ¶ 4, 5, 6, 8 & 9.

On the following day, March 25, 2017, defendant and Correctional Officer Atkins went to visit plaintiff at his cell to check on his health status. Salazar Decl. ¶ 11; Atkins Decl. (ECF No. 29-4) ¶ 7. It was plaintiff's day off from work. Salazar Decl. ¶ 11. During the visit, plaintiff presented documents to defendant and Atkins that he claimed showed his medical restrictions. Salazar Decl. ¶¶ 13, 14 & Ex. B (notebook documenting conversation with plaintiff on March 25, 2017); Atkins Decl. ¶ 8. But the documents did not show any medical restriction or

4

accommodation in force at that time. An April 30, 2015 accommodation chrono that granted plaintiff a temporary lifting restriction and lower bunk assignment had expired on October 30, 2015. Salazar Decl. ¶ 13; Atkins Decl. ¶ 8. Defendant advised plaintiff to consult medical if he believed the restriction/accommodation should be reinstated. Salazar Decl. ¶ 13; Atkins Decl. ¶ 8.

On March 30, 2017, plaintiff saw Dr. Branch and obtained a new accommodation chrono. Branch Decl. ¶¶ 2, 3, 9. "That form provided him with a medical accommodation that restricted the amount of weight he could lift, limited his use of stairs, and provided him with a bottom bunk assignment." Id. ¶ 3. The March 30, 2017 chrono was temporary for six months like the April 30, 2015 one that had expired on October 30, 2015. Id. ¶¶ 5, 9 & Ex. A (Apr. 30, 2015 chrono).

Defendant next saw plaintiff on March 31, 2017. Salazar Decl. ¶ 15. Defendant verified that plaintiff had a new accommodation chrono and noted that it provided plaintiff a lifting restriction of nineteen pounds, a stair-climbing restriction and a lower bunk assignment. Id. Defendant and Atkins immediately honored the new chrono and advised plaintiff that he would be moved from a cell on the third floor to one on the first floor and assigned a lower bunk, and that he would not be allowed to work anywhere but the first floor. Id. ¶ 16; Atkins Decl. ¶ 10.

On these facts, no reasonable jury could find that defendant was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment. Defendant had three interactions with plaintiff during the relevant time frame. On March 24, 2017, defendant gave plaintiff an excused absence from work because plaintiff complained of diarrhea. On March 25, 2017, defendant visited plaintiff on plaintiff's day off from work to inquire about plaintiff's health, and plaintiff presented defendant with documents plaintiff claimed evidenced his medical restrictions. But defendant noted that none of the documents showed a currently valid medical restriction or accommodation (the April 30, 2015 chrono that granted plaintiff a temporary lifting restriction and lower bunk assignment had expired on October 30, 2015) and advised plaintiff to consult medical if he believed that a previously granted restriction/accommodation should be reinstated. On March 31, 2017, defendant confirmed that plaintiff had obtained a new accommodation chrono on March 30, 2017 and advised plaintiff that they would adjust his living and work arrangements accordingly. No reasonable jury could find that in any of these three interactions with plaintiff defendant knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837.

Plaintiff argues that defendant was deliberately indifferent to his serious medical needs because the April 30, 2015 accommodation chrono restricting his lifting to no more than nineteen pounds and providing him with a lower bunk assignment was not temporary. He notes that at the

5

top of the chrono form the issuing physician marked the box next to "Permanent," rather than the one next to "Temporary." Branch Decl. Ex. A. But the issuing physician also wrote in the comments section of the chrono, "No lifting more than 19 lbs. Low bunk x 6 mo, then review." Id. Dr. Branch reviewed the April 30, 2015 accommodation chrono and concluded that it "was temporary and expired on October 30, 2015." Branch Decl. ¶ 5. He resolved any ambiguity as to the chrono's duration in favor of the issuing physician's specified intent of granting the lifting restriction and lower bunk accommodation for a period of six months. Defendant similarly could have reasonably concluded that the April 30, 2015 chrono plaintiff showed him on March 25, 2017 had expired and asked plaintiff to seek a new and valid one from medical staff, which plaintiff did on March 30, 2017 and defendant honored on March 31, 2017.

Defendant is entitled to qualified immunity from damages on plaintiff's claim that defendant was deliberately indifferent to plaintiff's serious medical needs because a reasonable correctional officer could have believed that his conduct was lawful under the circumstances. See Saucier, 533 U.S. at 201-02. A reasonable correctional officer could have believed that the April 30, 2015 chrono plaintiff produced on March 25, 2017 had expired and that asking plaintiff to obtain a new and valid one from medical staff before correctional staff made any adjustments to plaintiff's living/work arrangements was lawful. Plaintiff has not presented any probative evidence, or identified any probative evidence he still is seeking, that would compel a different conclusion. Defendant is entitled to summary judgment on plaintiff's § 1983 deliberate indifference claim based on qualified immunity.

2. Retaliation

To prevail on a First Amendment retaliation claim, a prisoner must show: (1) that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, that such action (4) chilled the prisoner's exercise of his First Amendment rights, and that (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

The prisoner must prove all the elements of a retaliation claim, including the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). But the prisoner need not prove a total chilling of his First Amendment rights; that his First Amendment rights were chilled, though not necessarily silenced, is enough.

Rhodes, 408 F.3d at 569.

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id.

Plaintiff claims that defendant ignored plaintiff's medical restrictions and had plaintiff perform restricted work duties in retaliation for complaints plaintiff had filed against other correctional officers. In support, plaintiff alleges that after he protested defendant's rejection of the documents purporting to show plaintiff's medical restrictions, defendant told him, "I've been told of your court actions against officers, resulting in money settlements. Now you will work as told. Saenz stop the appeals or get more of the same or worse." Compl. (ECF No. 1) at 3D.

Plaintiff's allegation arguably raises an inference of retaliatory motive in support of his claim that defendant took some adverse action against plaintiff because of plaintiff's filing complaints against other correctional officers. But to prevail on a retaliation claim, plaintiff also must prove the absence of legitimate correctional goals for the conduct of which he complains. See Pratt, 65 F.3d at 806. Plaintiff does not. Nor does plaintiff, for purposes of surviving summary judgment, set forth sufficiently probative evidence for a reasonable jury to find that defendant's actions did not reasonably advance a legitimate correctional goal. The evidence in the record instead strongly suggests that requiring plaintiff to obtain a new and valid accommodation chrono from medical staff before correctional staff made any adjustments to plaintiff's living/work arrangements reasonably advanced the legitimate correctional goal of preserving institutional order and discipline. Cf. Wood v. Beauclair, 692 F.3d 1041, 1051 (9th Cir. 2012) (rejecting retaliatory transfer claim because transfer of prisoner to another prison to distance him from two female officers who were fraternizing with him contrary to prison policy reasonably advanced a legitimate correctional goal).

At minimum, defendant is entitled to qualified immunity from damages on plaintiff's retaliation claim because a reasonable correctional officer could have believed that his conduct was lawful under the circumstances. See Saucier, 533 U.S. at 201-02. A reasonable correctional officer could have believed that the April 30, 2015 chrono plaintiff produced on March 25, 2017

7

had expired and that asking plaintiff to obtain a new and valid one from medical staff before correctional staff made any adjustments to plaintiff's living/work arrangements reasonably advanced a legitimate correctional goal and therefore was lawful. Plaintiff has not presented any probative evidence, or identified any probative evidence he still is seeking, that would compel a different conclusion. Defendant is entitled to summary judgment on plaintiff's § 1983 retaliation claim.

/

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 17) is DENIED and defendant's cross-motion for summary judgment (ECF No. 29) is GRANTED.[2]

**IT IS SO ORDERED**.

Dated: January 7, 2019

_____

CHARLES R. BREYER
United States District Judge

---

[2] Plaintiff's motion to compel additional discovery (ECF No. 24) is DENIED as moot and without merit.

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GONZALEZ SAENZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>A. SALAZAR,<br><br>　　　　Defendant. | Case No. 3:17-cv-05316-CRB<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 7, 2019, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert Gonzalez Saenz ID: K61926
Centinela State Prison
P.O. Box 931
Imperial, CA 92251

Dated: January 7, 2019

　　　　　　　　　　　　　　　　　　　　Susan Y. Soong
　　　　　　　　　　　　　　　　　　　　Clerk, United States District Court

　　　　　　　　　　　　　　　　　　　　By:_____
　　　　　　　　　　　　　　　　　　　　Lashanda Scott, Deputy Clerk to the
　　　　　　　　　　　　　　　　　　　　Honorable CHARLES R. BREYER